# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>    Respondent,<br><br>    v.<br><br>ADRIAN CONTRERAS-REBOLLAR,<br><br>    Appellant. | No.  48923-6-II<br><br>PART PUBLISHED OPINION |

BJORGEN, J. — Adrian Contreras-Rebollar appeals from the sentence imposed following his resentencing hearing, asserting that the sentencing court erred by imposing a $200 criminal filing fee as a mandatory legal financial obligation (LFO).  In his statement of additional grounds for review (SAG), Contreras-Rebollar also contends that (1) the sentencing court lacked authority to resentence him under RAP 7.2(e), (2) the judge presiding over his resentencing hearing violated Code of Judicial Conduct(3)(D)(1) (CJC) and the appearance of fairness doctrine by denying his recusal motion, (3) the community custody provisions of RCW 9.94A.701 as applied to his sentence violate the constitutional prohibition on ex post facto laws, and (4) the sentencing court's finding that he was on community custody during his offense violated his jury trial right.

In the published portion of this opinion, we hold that the sentencing court had the authority to resentence Contreras-Rebollar under RAP 7.2(e), but that it violated the constitutional prohibition against ex post facto laws by imposing a fixed 36-month community custody term under RCW 9.94A.701.  In the unpublished portion we hold against Contreras-Rebollar's other challenges to his sentence.

No. 48923-6-II

Therefore, we vacate the community custody portion of Contreras-Rebollar's sentence and remand for imposition of a community custody term consistent with the law in effect when he committed his offenses. We affirm the remainder of his sentence.

FACTS

In February 2007, Contreras-Rebollar was convicted of two counts of first degree assault and one count of second degree unlawful possession of a firearm. In Contreras-Rebollar's first appeal of his 2007 convictions and sentence, we held in an unpublished opinion that the State failed to present sufficient evidence at sentencing supporting its allegations of Contreras-Rebollar's criminal history and community custody status at the time of his offenses. *State v. Contreras-Rebollar*, noted at 149 Wn. App. 1001 (2009). Accordingly, we reversed Contreras-Rebollar's sentence and remanded for resentencing.

Following his 2010 resentencing, Contreras-Rebollar again appealed his sentence and also filed a personal restraint petition (PRP). *State v. Contreras-Rebollar*, noted at 169 Wn. App. 1001 (2012). In our unpublished opinion addressing both the direct appeal and PRP, we rejected Contreras-Rebollar's claim that the resentencing court's community custody finding violated his Sixth Amendment jury trial right. *Contreras-Rebollar*, noted at 169 Wn. App. 1001. However, we also held that

> the record suggests that the resentencing court may not have taken into account any good time credit to which Contreras-Rebollar may have been entitled and that might have affected its determination of whether he had been on community custody at the time he committed the charged crimes.

*Contreras-Rebollar*, noted at 169 Wn. App. 1001, 2012 WL 2499369, at *8. We therefore again remanded for resentencing, directing the State to "put on the record all facts pertinent to Contreras-Rebollar's community custody status at the time he committed the charged crimes,

2

including any good time credit calculation to which he may have been entitled." *Contreras-Rebollar*, 2012 WL 2499369, at *8.

Contreras-Rebollar was again resentenced on March 1, 2013. However, the sentencing court did not have authority to resentence Contreras-Rebollar on that date because we had not yet issued the mandate from our 2012 opinion. We issued our mandate from the 2012 opinion on August 15, 2013. Contreras-Rebollar filed a supplemental PRP, which we denied in an unpublished opinion in 2014. *State v. Contreras-Rebollar*, No. 41672-7-II, slip op at 182 Wn. App. 1046 (Wash. Ct. App. Aug. 5, 2014). We issued the mandate from our 2014 unpublished opinion on January 9, 2015.

The sentencing court again resentenced Contreras-Rebollar in April 2016, which resentencing is the subject of his current appeal. Following the 2016 resentencing hearing, the sentencing court found that Contreras-Rebollar was on community custody at the time that he committed his offenses. The sentencing court stated that it would impose as LFOs a $500 crime victim penalty assessment, a $100 DNA (deoxyribonucleic acid) testing fee, and a $200 criminal filing fee. Defense counsel requested the sentencing court to waive the $200 criminal filing fee based on Contreras-Rebollar's inability to pay the fee, asserting that it was within the sentencing court's discretion to do so. The sentencing court rejected defense counsel's request and thereafter imposed the above LFOs and the same 380-month incarceration term as it had imposed in 2007. The court also imposed a fixed community custody term of 36 months. Contreras-Rebollar appeals from his sentence.

ANALYSIS

I. RAP 7.2 AND PRPS

Contreras-Rebollar argues that the sentencing court lacked authority to resentence him under RAP 7.2 because he had a PRP pending with our court on the date of his resentencing. Because the filing of a PRP does not divest the superior court of its authority to act in a case under RAP 7.2, we disagree.

RAP 7.2 provides in relevant part:

> *After review is accepted* by the appellate court, the trial court has authority to act in a case only to the extent provided in this rule, unless the appellate court limits or expands that authority as provided in rule 8.3.
>
> . . . .
>
> . . . . The trial court has authority to hear and determine (1) postjudgment motions authorized by the civil rules, the criminal rules, or statutes, and (2) actions to change or modify a decision that is subject to modification by the court that initially made the decision. The postjudgment motion or action shall first be heard by the trial court, which shall decide the matter. If the trial court determination will change a decision *then being reviewed* by the appellate court, the permission of the appellate court must be obtained prior to the formal entry of the trial court decision. A party should seek the required permission by motion.

(Emphasis added.)

In a colloquial sense of the word, an appellate court considering a PRP may be said to "review" a trial court's decision. However, RAP 7.2 is clear that it is confined to situations where review has been "accepted" by the appellate court. Title 6 of the RAPs provides three methods through which our court "accepts review" of a trial court's or administrative agency's decision. RAP 6.1 states that "[t]he appellate court 'accepts review' of a trial court decision upon the timely filing in the trial court of a notice of appeal from a decision which is reviewable as a matter of right." RAP 6.2 also allows appellate court review of a trial court decision in some

circumstances by granting a motion for discretionary review. Finally, RAP 6.3 provides that "[t]he appellate court accepts direct review of a final decision of an administrative agency in an adjudicative proceeding . . . by entering an order or ruling accepting review." None of these provisions speak to the acceptance of review of a PRP.

A PRP, in contrast, constitutes an original action in the appellate court. RAP 16.1. Although an appellate court conducts a "preliminary review" on receipt of a PRP and may dismiss a PRP in some circumstances, there is no threshold requirement that the appellate court accept review in order to proceed. RAP 16.8.1.

Read together, RAP Titles 6 and 16 leave no room for quibble: a PRP proceeds without the need for acceptance of review by the appellate court. With that, the filing of a PRP does not divest the trial court of authority to act in a case under RAP 7.2. Contreras-Rebollar's argument to the contrary fails.

## II. RCW 9.94A.701 AND EX POST FACTO LEGISLATION

Next, Contreras-Rebollar argues that the sentencing court's application of RCW 9.94A.701 to impose a fixed 36-month community custody term violated the constitutional prohibition on ex post facto laws. The State concedes that remand for a correction of Contreras-Rebollar's sentence is required if we concur with the opinion of Division Three of our court in *State v. Coombes*, 191 Wn. App. 241, 361 P.3d 270 (2015), *review denied*, 185 Wn.2d 1020 (2016). We agree with the reasoning in *Coombes* and accept the State's concession.

We review de novo whether the sentencing court had statutory authority to impose community custody conditions. *Coombes*, 191 Wn. App. at 249. We also review alleged

violations of the constitutional prohibition on ex post facto laws de novo. *Coombes*, 191 Wn. App. at 250-51.

The United States Constitution and the Washington State Constitution prohibit ex post facto laws. U.S. CONST. art. I, § 10; WASH. CONST. art. I, § 23. "A law that imposes punishment for an act that was not punishable when committed or increases the quantum of punishment violates the ex post facto prohibition." *In re Pers. Restraint of Hinton*, 152 Wn.2d 853, 861, 100 P.3d 801 (2004). To succeed in his claim of an ex post facto violation, Contreras-Rebollar must show that RCW 9.94A.701(1) operates retroactively and (2) increases the level of punishment from that which he was subject to on the date he committed his offenses. *Coombes*, 191 Wn. App. at 251. We hold that Contreras-Rebollar has made both showings.

*Coombes* addressed a similar ex post facto challenge to RCW 9.94A.701. 191 Wn. App. at 249-53. On the retroactive prong of the ex post facto violation test, *Coombes* noted that the legislature had explicitly stated its intent that the statute

> "applies retroactively and prospectively regardless of whether the offender is currently on community custody or probation with the department, currently incarcerated with a term of community custody or probation with the department, or sentenced after the effective date of this section."

191 Wn. App. at 251 (quoting LAWS OF 2009, ch. 375, § 20). As with the defendant in *Coombes*, RCW 9.94A.701 applies retroactively to Contreras-Rebollar because he committed his offenses before the legislature amended the statute.

In addressing the punishment prong of the ex post facto violation test, the *Coombes* court noted that "the applicable quantum of punishment increases when a statute makes a formerly discretionary punishment mandatory." 191 Wn. App. at 251-52 (citing *Lindsey v. Washington*, 301 U.S. 397, 401-02, 57 S. Ct. 797, 81 L. Ed. 1182 (1937)). The *Coombes* court held that RCW

9.94A.701 increased the defendant's punishment because it provided for a fixed 36-month community custody term while the statute in effect when the defendant committed his crime provided for a discretionary range of 24 to 48 months of community custody. 191 Wn. App. at 252-53.

As in *Coombes*, the law in effect when Contreras-Rebollar committed his offenses provided for a discretionary 24 to 48 months' community custody term. Former RCW 9.94A.715(1) (2006) stated that a sentencing court shall "sentence the offender to community custody for the community custody range established under RCW 9.94A.850 or up to the period of earned release awarded pursuant to RCW 9.94A.728(1) and (2), whichever is longer." In addition, former RCW 9.94A.030(41)(a)(v) (2006) classified first degree assault as a serious violent offense, and former WAC 437-20-010 (2000) established a 24 to 48 month community custody range for serious violent offenses. In 2009, the legislature replaced this variable term of community custody with a fixed term of 36, 18, or 12 months, depending on the type of offense. *See Coombes*, 191 Wn. App. at 252. Contreras-Rebollar was sentenced under the current statute to a fixed 36-month term of community custody for his first degree assault convictions.

As in *Coombes*, the fixed term of community custody under the current form of RCW 9.94A.701 increased Contreras-Rebollar's punishment "because it changed a previously discretionary term to a mandatory term." 191 Wn. App. at 253. Accordingly, we hold that the community custody provision of RCW 9.94A.701 violated the constitutional prohibition against ex post facto laws as applied to Contreras-Rebollar's sentence. We therefore vacate the community custody portion of Contreras-Rebollar's sentence and remand for imposition of a community custody term consistent with the law in effect when he committed his offenses.

7

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

### III.  IMPOSITION OF CRIMINAL FILING FEE

Contreras-Rebollar contends that the trial court exceeded its statutory authority by imposing a $200 criminal filing fee as an LFO without first conducting an adequate inquiry of his current or likely future ability to pay.  He claims that, contrary to our decision in *State v. Lundy*, 176 Wn. App. 96, 308 P.3d 755 (2013), the criminal filing fee is discretionary rather than mandatory.  Contreras-Rebollar does not argue that imposition of the criminal filing fee deprives him of substantive due process.

We recently addressed and rejected this same claim in *State v. Gonzales*, 198 Wn. App. 151, 392 P.3d 1158, *review denied*, 188 Wn.2d 1022 (2017).  There, as here, the appellant argued that "the filing fee is not mandatory because the language in RCW 36.18.020(2)(h) is ambiguous and differs from that of other mandatory LFO statutes."  *Gonzales*, 198 Wn. App. at 153.  In rejecting the claim that RCW 36.18.020(2)(h) merely confers discretion to impose the criminal filing fee, the *Gonzales* court stated:

> RCW 36.18.020(2)(h) requires that the defendant "*shall* be liable," which clarifies that there is not merely a risk of liability because "[t]he word 'shall' in a statute . . . imposes a mandatory requirement unless a contrary legislative intent is apparent." *State v. Krall*, 125 Wn.2d 146, 148, 881 P.2d 1040 (1994) (quoting *Erection Co. v. Dep't of Labor & Indus.*, 121 Wn.2d 513, 518, 852 P.2d 288 (1993)).  There is no such contrary intent apparent in the statute.

198 Wn. App. at 155.

We adhere to our decisions in *Gonzales* and *Lundy* and hold that because the fee is mandatory, the trial court properly imposed the $200 criminal filing fee absent an inquiry into Contreras-Rebollar's ability to pay the fee.

## IV. RECUSAL MOTION

### A. CJC 2.9, 2.11, and the Appearance of Fairness Doctrine

Next, Contreras-Rebollar argues in his SAG that the sentencing court judge abused his discretion by denying his recusal motion. On the record before us, we disagree.

Before the start of his resentencing hearing, Contreras-Rebollar filed a motion for the sentencing court judge to recuse himself from the matter. The motion alleged that the sentencing court judge had had ex parte communications with the prosecutor that "concern[ed] the very issues the court must decide before sentencing Mr. Contreras-Rebollar, thus violating defendant's constitutional due process guaranty of a fair sentencing by a fair and impartial judge." Clerk's Papers (CP) at 98.

From the record before us, we can glean the following regarding the sentencing court judge's ex parte communication with the prosecutor. On April 14, 2016, the sentencing court judge directed prosecutors and defense counsel to provide a copy of our court's most recent decision regarding a PRP filed by Contreras-Rebollar. One of the prosecutors went to the courthouse to submit copies of our court's opinions. The prosecutor saw the sentencing court judge and "asked which opinion the Court wanted and attempted to explain that there was no actual opinion issued by the Court of Appeals regarding this PRP because it was pending." Report of Proceedings (RP) at 10. The prosecutor then provided the court with copies of the two other Court of Appeals opinions that had been previously filed and a copy of Contreras-

9

Rebollar's opening brief in his PRP. The sentencing court judge also recalled the prosecutor mentioning something about her son during the ex parte communication. Following the ex parte communication, the prosecutor e-mailed defense counsel to inform her of the contact.

At the start of the April 15 resentencing hearing, defense counsel informed the court that she had filed a recusal motion based on the ex parte communication between the sentencing court judge and the prosecutor that had taken place the previous day. Defense counsel stated she had received the prosecutor's e-mail disclosing the ex parte communication on the afternoon of April 14. The sentencing judge then explained that he had e-mailed all the parties on April 14 to request a copy of our court's most recent opinion on Contreras-Rebollar's PRP to prepare for the April 15 resentencing hearing. During the course of the hearing on defense counsel's recusal motion, the court and the prosecutor disclosed the nature of the ex parte communication as described above. Following argument by the parties, the sentencing court denied the recusal motion.

We review a court's decision on a recusal motion for an abuse of discretion. *State v. Bilal*, 77 Wn. App. 720, 722, 893 P.2d 674 (1995). Due process, the appearance of fairness, and CJC Canon 2, Rule 2.11 require disqualification of a judge if he or she is biased against a party or his or her impartiality may be reasonably questioned. *State v. Dominguez*, 81 Wn. App. 325, 328, 914 P.2d 141 (1996). Under the appearance of fairness doctrine, a judicial proceeding is valid only if a reasonable person would conclude that the parties obtained a fair, impartial, and neutral hearing. *Bilal*, 77 Wn. App. at 722. "The law goes farther than requiring an impartial judge; it also requires that the judge appear to be impartial." *State v. Madry*, 8 Wn. App. 61, 70,

504 P.2d 1156 (1972). Ex parte communications may implicate the appearance of fairness doctrine. *State v. Romano*, 34 Wn. App. 567, 569, 662 P.2d 406 (1983).

Contreras-Rebollar bases his recusal argument on the appearance of fairness doctrine and on former CJC Canon 3(D)(1). This prior provision, however, has been effectively replaced by current CJC 2.9 and CJC 2.11. In order to fairly evaluate his arguments, we will deem them to rest on the appearance of fairness doctrine and on CJC 2.9 and 2.11.

CJC Rule 2.9(A) concerns ex parte communications and provides in relevant part:

A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter, before that judge's court except as follows:

(1) When circumstances require it, ex parte communication for scheduling, administrative, or emergency purposes, which does not address substantive matters . . . is permitted, provided:

(a) the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication; and

(b) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication, and gives the parties an opportunity to respond.

The CJC does not define the term "administrative." *Black's Law Dictionary* 53 (10th ed. 2014) defines "administrative" as "[o]f, relating to, or involving the work of managing a company or organization; executive." Of the definitions of the term in *Webster's Third New International Dictionary* 28 (1969), the most apt is "performance of executive duties: Management, Direction Superintendence." The meaning of "administrative" is also illuminated obliquely in *Randy Reynolds & Associates, Inc. v. Harmon*, 1 Wn. App. 2d 239, 249, 404 P.3d

602 (2017), *review granted*, 418 P.3d 802 (2018), holding that the ex parte hearing of a motion to stay execution of a writ of restitution was not administrative under CJC 2.9(A)(1).

Under this authority, the prosecutor's ex parte communication with the sentencing court judge concerned only the administrative matter of providing the sentencing court with its requested documents and, thus, did not violate CJC Rule 2.9.  As set out above, the sentencing judge requested the parties to provide him with a copy of our most recent opinion on Contreras-Rebollar's PRP.  The prosecutor saw the judge, explained that no opinion had been issued by our court on this PRP because it was still pending, and provided the judge with copies of the two other Court of Appeals opinions that had been previously filed.

Contrary to Contreras-Rebollar's recusal motion, the ex parte communications did not concern substantive matters at issue in his resentencing; specifically, whether Contreras-Rebollar was in community custody status during the commission of his offenses.  Instead, the communication concerned the delivery of requested material to the judge.  This conduct without substantive import falls squarely within the scope of "administrative" actions as used in CJC 2.9(A)(1).

This, though, does not conclude the inquiry into CJC 2.9, because ex parte communications are only saved as administrative matters if the requirements of CJC 2.9 (A)(1)(a) and (b) are met.  Of those, the only one in need of examination is subsection (b), which states, "(b)  [T]he judge makes provision promptly to notify all other parties of the substance of the ex parte communication, and gives the parties an opportunity to respond."

The record does not show that the judge made any provision to notify other parties of the communication.  The record does show that on April 14 the judge asked counsel for the parties to

give him certain appellate court opinions; the prosecutor did so later that afternoon; by the start of the resentencing hearing the next day, the defendant had filed a motion to recuse; and during the hearing on April 15 on the recusal motion, the court and the prosecutor disclosed the nature of the ex parte communication as described above. These events apparently occurred in a period of less than 24 hours. Against that backdrop, we cannot say that the judge's failure to notify defense counsel on the day of the communication violated his duty to "promptly" make provision to notify other parties. For these reasons, the ex parte communication did not violate CJC 2.9.

Turning to CJC 2.11, subsection (A) states in pertinent part:

A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances.

In the present circumstances, the sentencing judge's request to both parties to provide prior appellate court opinions and the ex parte acceptance of those opinions is not a reasonable basis for questioning the judge's impartiality. Thus, the judge's actions did not violate CJC 2.11.

For similar reasons, on this record no reasonable person would conclude that the sentencing judge's impartiality may be reasonably questioned or that Contreras-Rebollar did not receive a fair resentencing hearing under the appearance of fairness doctrine because of the prosecutor's ex parte communication with the sentencing judge.

Contreras-Rebollar argues, though, that his multiple resentencings, added to the ex parte communication, would reasonably suggest that the judge was not impartial. The resentencings, however, were simply examples of the sometimes iterative way the judicial system attempts to achieve fair resolutions of various issues. If anything, that process should increase confidence in the system. Accordingly, the sentencing court did not violate the appearance of fairness doctrine

through its ex parte communications with the prosecutor and did not abuse its discretion by denying Contreras-Rebollar's motion to recuse.

B .    Public Trial Right

Contreras-Rebollar also asserts that the ex parte communication constituted a courtroom closure but does not explicitly raise a public trial violation claim. To the extent that Contreras-Rebollar challenges the ex parte communication as violating his public trial right, his contention fails.

When evaluating a public trial right violation claim, we must first determine whether the public trial right was implicated in the challenged proceeding. *State v. Smith*, 181 Wn.2d 508, 513, 334 P.3d 1049 (2014). If the public trial right was implicated, we must then determine whether there was a closure and, if so, whether the closure was justified. *Smith*, 181 Wn.2d at 513. We apply a two-prong "experience and logic" test to determine whether the right to a public trial attaches to a particular proceeding. *State v. Sublett*, 176 Wn.2d 58, 72-73, 292 P.3d 715 (2012). Under that test, the defendant must show both that the "'place and process have historically been open to the press and general public'" and that "'public access plays a significant positive role in the functioning of the particular process in question.'" *Sublett*, 176 Wn.2d at 73 (quoting *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8-10, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)). Contreras-Rebollar fails to make either showing.

Contreras-Rebollar has not identified, and we have not located, any case supporting the proposition that an attorney's act of filing of documents requested by the court has historically been open to the press and general public. Additionally, because presumably any future reliance by the sentencing court on such documents would be placed on the record in open court, logic

14

dictates that public access to the filing of documents would not play a significant positive role in the process. Accordingly, Contreras-Rebollar cannot demonstrate that the public trial right was implicated.

## V. JURY TRIAL RIGHT

Finally, Contreras-Rebollar argues in his SAG that the sentencing court's finding that he was on community custody during the commission of his offenses violated his jury trial right under *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). He additionally argues that the sentencing court's finding that he was on community custody violated the requirement of proof beyond a reasonable doubt.

Contreras-Rebollar raised these same claims in his previous appeal. *Contreras-Rebollar*, 2012 WL 2499369, at *1. In addressing these claims, we noted that our Supreme Court's opinion in *State v. Jones*, 159 Wn.2d 231, 149 P.3d 636 (2006), squarely addressed and rejected these same arguments. We therefore held that, under *Jones*, the sentencing court did not violate Contreras-Rebollar's jury trial right by finding that he was on community custody during the commission of his offenses. Because this appeal represents a subsequent stage of the same litigation, and because Contreras-Rebollar has not requested us to revisit our prior opinion under RAP 2.5(c)(2), the law of the case doctrine precludes our review of his claims in this appeal. *State v. Merrill*, 183 Wn. App. 749, 757, 335 P.3d 444 (2014) (citing *Roberson v. Perez*, 156 Wn.2d 33, 41, 123 P.3d 844 (2005)). Accordingly, we do not further address this issue.

VI.  APPELLATE FEES

Contreras-Rebollar also requests that we exercise our discretion to waive appellate fees in this matter.  Because Contreras-Rebollar has succeeded in his claim that the community custody portion of his sentence violated the constitutional prohibition against ex post facto laws, the State has not substantially prevailed in this appeal.  Accordingly, the State is not entitled to costs, and we need not address Contreras-Rebollar's request for the waiver of appellate fees.

CONCLUSION

We vacate the sentencing court's imposition of a fixed 36-month community custody term and remand for imposition of a community custody term consistent with the law in effect when Contreras-Rebollar committed his offenses.  We affirm the remainder of his sentence.

Bjorgen, J.

We concur:

Maxa, C.J.

Lee, J.