FILED
NOVEMBER 10, 2015
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32806-6-III |
| | ) | (consolidated with |
| Respondent, | ) | No. 32903-8-III) |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL DUKE COOMBES, | ) | |
| | ) | |
| Appellant. | ) | PUBLISHED OPINION |
| | ) | |
| | ) | |
| In the Matter of the Personal Restraint of | ) | |
| | ) | |
| MICHAEL DUKE COOMBES, | ) | |
| | ) | |
| Petitioner. | ) | |

LAWRENCE-BERREY, J. — After withdrawing his guilty plea, Michael

Coombes was convicted of first degree murder while armed with a firearm. Mr.

Coombes appeals, contending (1) the trial court erred in imposing a 36-month

term of community custody, (2) the trial court erred by imposing a community

custody condition prohibiting Mr. Coombes from having any association or

contact with gang members or their associates, and (3) the judgment and sentence

improperly omitted the jury's finding that Mr. Coombes used a firearm in the

commission of the first degree murder. In his consolidated personal restraint petition (PRP), Mr. Coombes contends that the sentencing court erred in including a conviction for unlawful possession of a firearm in its calculation of his offender score.

We affirm Mr. Coombes's conviction and dismiss his PRP. We remand for the trial court to (1) correct the community custody term to be consistent with the law in effect in 2007, (2) conduct a hearing to consider the gang association prohibition, and (3) include in the judgment and sentence the jury's finding that Mr. Coombes used a firearm in the commission of the first degree murder.

FACTS

In September 2007, the State charged Michael Duke Coombes with first degree murder while armed with a firearm and first degree unlawful possession of a firearm. In June 2008, Mr. Coombes pleaded guilty to first degree murder without a weapon enhancement and to first degree unlawful possession of a firearm. In the plea statement, the State made the following recommendation:

> (g)　　... 300 months in prison, credit for time served, dismiss weapon enhancement. Dismiss Intimidation of Witness charge, 08-1-00556-0, plead to Unlawful Possession of a Firearm charge on a different day, $500.00 crime victims compensation assessment, $200.00 court costs, $100.00 DNA [deoxyribonucleic acid] collection fee, restitution, 24-48 months community custody.

2

Clerk's Papers (CP) at 13, 21. On June 16, 2008, the trial court entered a judgment and sentence as to the first degree murder charge and a separate judgment and sentence as to the unlawful possession of a firearm charge.

In April 2009, Mr. Coombes filed a motion for writ of habeas corpus in superior court alleging his plea was invalid. The superior court transferred the writ to this court for consideration as a PRP. In an unpublished opinion filed January 27, 2011,[1] this court granted Mr. Coombes's PRP and remanded the case back to the trial court to allow him to withdraw his guilty plea because he was not informed that early release credits were unavailable during the first 240 months of his first degree murder sentence. Mr. Coombes then withdrew his guilty plea and the case was set for a jury trial.

Before trial, Mr. Coombes moved in limine to exclude any mention of his alleged gang affiliation. In response, the State stipulated that it would not elicit testimony from its law enforcement witnesses regarding any gang affiliation but that it wanted to reserve the right to raise gang-related evidence for purposes of impeachment of witnesses related to the witness intimidation charge.

---

[1] *In re Pers. Restraint of Coombes*, No. 28036-5-III, 2011 WL 240687, 159 Wn. App. 1044.

3

At trial, the State called April Atkinson to testify for purposes of the witness intimidation charge. During her testimony, the State asked Ms. Atkinson whether she recalled Mr. Coombes saying, "'I got Cryps, [sic] Blood, mafia, whatever gangs you can think of after [witness Jamie Hall], so [Ms. Hall] better watch her back[.]'" Report of Proceedings (RP) at 420. Ms. Atkinson replied that she did not remember Mr. Coombes making the statement. The State later called Detective Theresa Ferguson to testify regarding her investigation. Detective Ferguson testified that Ms. Atkinson had told her that Mr. Coombes made the above-quoted threat concerning Ms. Hall. Detective Ferguson also testified that Ms. Atkinson had told her that Mr. Coombes believed certain people had "ratted him out." RP at 586.

The State called Detective Timothy Madsen to testify for purposes of the first degree murder charge. Detective Madsen testified that Mr. Coombes made the following pretrial statements to him about the murder victim:

Q    And what did Mr. Coombes tell you next about Mr. Nichols?
A    He told us that Mr. Nichols, whom he described as Red, had been arguing with Mr. Coombes' nephew, Chris. . . . .
     During the argument between Chris and Red, or Mr. Nichols, Chris had hit Mr. Nichols in the head after throwing an empty beer can at him.
Q    What did Mr. Coombes say happened after that?

A     He told us that Red, or Mr. Nichols, had walked over to Mr. Coombes and stated, quote, "You keep that fucker away from me or I'll stab him."

Q     Stab who?

A     And he was referring to his—that Red was telling Mr. Coombes to keep Chris, Mr. Coombes' nephew, away from Red, or Mr. Nichols.

Q     What did he say next?

A     Mr. Coombes told us that at one point, Red had threatened Mr. Coombes by saying he knew some gypsy jokers that would take care of them, and then he told us he—

     MR. COMPTON:   Objection. Your Honor, can we approach on this?

     THE COURT:     Yes.

     (BENCH CONFERENCE HELD.)

     MR. COMPTON:   My objection is the next words out of the detective's mouth is going to be about Mr. Coombes' gang affiliation, which he claims to have some Aryan connection.

     THE COURT:     Is this going to be part of his statements as threats, but not the detective did not write any statements that he—

     MR. TREECE:     I'm sorry, Your Honor. I thought we went over this in the [CrR] 3.5. This is after he had been [read his *Miranda*[2] rights].

     THE COURT:     Right, but when we specifically talked about gang affiliation, I didn't hear the statement come out at the [CrR] 3.5 hearing this was the specific statement. So I would [sustain the objection] because we ruled on that [during the motions in limine].

RP at 603-04.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

At the end of trial, the jury found Mr. Coombes guilty of first degree murder while armed with a firearm and of tampering with a witness but not guilty of intimidating a witness. Mr. Coombes appealed the convictions for first degree murder and tampering with a witness. In an unpublished opinion filed June 18, 2013,[3] this court affirmed the conviction for first degree murder and reversed and remanded the tampering with a witness conviction because of an erroneous jury instruction.

On remand, the trial court resentenced Mr. Coombes on the first degree murder charge, lowering his offender score from a six to a five after removing the conviction for tampering with a witness pursuant to this court's June 2013 decision. In the judgment and sentence entered after resentencing, the trial court imposed a 36-month term of community custody. The trial court also imposed a community custody condition "[t]hat the defendant not be allowed to have any association or contact with known felons or gang members or their associates." CP at 110. The judgment and sentence does not indicate the jury's finding that Mr. Coombes used a firearm in the commission of the first degree murder.

Mr. Coombes appeals.

---

[3] *State v. Coombes*, Nos. 30550-3-III, 30551-1-III, 2013 WL 3148180, 175 Wn. App. 1025.

ANALYSIS

1.    *Whether the sentencing court erred in imposing a 36-month term of community custody*

Mr. Coombes contends, and the State concedes, that the trial court erred by imposing a 36-month term of community custody under RCW 9.94A.701, where the law in effect at the time of the offense, former RCW 9.94A.715 (2006), provided a variable term of 24 to 48 months of community custody for serious violent crimes.

This court reviews de novo whether the trial court had the requisite statutory authority to impose community custody conditions. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). While Mr. Coombes challenges the term of community custody for the first time on appeal, such a challenge is appropriate because courts must correct an erroneous sentence upon discovery. *In re Pers. Restraint of Call*, 144 Wn.2d 315, 331-32, 28 P.3d 709 (2001).

The Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, governs a court's imposition of community custody. The SRA provides that any sentence imposed under its authority must be in accordance with the law in effect when the offense was committed. RCW 9.94A.345. Mr. Coombes's crime occurred between August 30, 2007, and September 2, 2007, so former RCW 9.94A.715

7

governs. RCW 10.01.040 would also support this conclusion, as it provides,

"Whenever any criminal or penal statute shall be amended or repealed, all offenses

committed . . . while it was in force shall be punished or enforced as if it were in

force, notwithstanding such amendment or repeal, unless a contrary intention is

expressly declared in the amendatory or repealing act."

This court analyzed a similar issue in *State v. Snedden*, 166 Wn. App. 541,

544-45, 271 P.3d 298 (2012), citing RCW 10.01.040. This court concluded that

the legislature had expressed the requisite "contrary intent" in the amendatory act.

*Id.* at 544. The legislature had directed courts "to apply the provisions of the

current community custody law to offenders sentenced after July 1, 2009, but who

committed their crime prior to August 1, 2009 to the extent that such application is

constitutionally permissible." LAWS OF 2008, ch. 231, § 6. Therefore, because

Mr. Snedden fit within this category and made "no argument that the application

of the current statute is constitutionally impermissible," this court concluded that

the trial court properly relied on RCW 9.94A.701 even though it was not in effect

when he committed his crime. *Snedden*, 166 Wn. App. at 544. But, unlike the

offender in *Snedden*, Mr. Coombes contends the trial court's application of

RCW 9.94A.701 is constitutionally impermissible as a violation of the prohibition

8

on ex post facto laws because the law in effect when he committed the crime
called for a 24 to 48 month range of community custody.

This court reviews de novo alleged violations of the prohibition of ex post
facto laws. *State v. Pillatos*, 159 Wn.2d 459, 469, 474-77, 150 P.3d 1130 (2007).
The party disputing the constitutionality of a statute bears the burden of proving
that the statute is unconstitutional beyond a reasonable doubt. *State v. Enquist*,
163 Wn. App. 41, 45, 256 P.3d 1277 (2011).

Both the United States and Washington Constitutions prohibit ex post facto
laws. U.S. CONST. art. I, § 10; CONST. art. I, § 23. The State violates the
prohibition on ex post facto laws when it imposes punishment for conduct that was
not punishable when committed or when it increases the quantum of punishment.
*In re Pers. Restraint of Flint*, 174 Wn.2d 539, 545, 277 P.3d 657 (2012) (quoting
*In re Pers. Restraint of Hinton*, 152 Wn.2d 853, 861, 100 P.3d 801 (2004)). In
order to bring a successful ex post facto claim, Mr. Coombes must show that the
law he is challenging (1) is operating retroactively, and (2) increases the quantum
of punishment from the level he was subject to on the date of the crime. *Id.* at
545, 554.

Mr. Coombes satisfies both prongs of this test. First, RCW 9.94A.701 by
its own terms operates retroactively. The session law amending former

RCW 9.94A.701 that permits variable terms of community custody included the same statement of legislative intent as that of 2008, chapter 231, quoted above. LAWS OF 2009, ch. 375, § 10. It also added this statement: "This act applies retroactively and prospectively regardless of whether the offender is currently on community custody or probation with the department, currently incarcerated with a term of community custody or probation with the department, or sentenced after the effective date of this section." LAWS OF 2009, ch. 375, § 20. Additionally, the statute operates retroactively as to Mr. Coombes because Mr. Coombes committed his offense before the legislature amended the statute. Thus, Mr. Coombes has satisfied the first prong of the test.

As for the second prong, the applicable quantum of punishment increases when a statute makes a formerly discretionary punishment mandatory. *Lindsey v. Washington*, 301 U.S. 397, 401-02, 57 S. Ct. 797, 81 L. Ed. 1182 (1937). In *Lindsey*, at the time of the offense, the sentencing court had discretion to impose a penalty of imprisonment for at least 6 months and up to 15 years. *Id.* at 398. Before sentencing, the legislature made the maximum penalty mandatory, and the offender then received the required 15-year sentence. *Id.* at 398-99. The United States Supreme Court held that the new law impermissibly increased the severity of punishment and invalidated the offender's sentence. *Id.* at 401-02.

10

Here, when Mr. Coombes committed the offense in late 2007, the SRA imposed a discretionary range of community custody of 24 to 48 months. *See* Former RCW 9.94A.715(1) (stating that a sentencing court was required to sentence an offender "to community custody for the community custody range established under RCW 9.94A.850 or up to the period of earned release awarded pursuant to RCW 9.94A.728(1) and (2), whichever is longer"); former RCW 9.94A.850(5) (2005) (establishing a sentencing guidelines commission empowered to recommend community custody ranges); former RCW 9.94A.030(41)(a)(i) (2006) (classifying first degree murder as a "serious violent offense"); and former WAC 437-20-010 (listing the community custody range for serious violent offenses as 24 to 48 months). The legislature repealed RCW 9.94A.715 in 2008 and added RCW 9.94A.701, which maintained the language from former RCW 9.94A.715 authorizing variable terms of community custody. LAWS OF 2008, ch. 231, §§ 6, 7.[4] Then, in 2009, the legislature amended former RCW 9.94A.701 by removing the language permitting variable terms of community custody. LAWS OF 2009, ch. 375, § 5. The legislature replaced the

_____

[4] Subsequently, the legislature reenacted former RCW 9.94A.715 and then repealed it once again. LAWS OF 2008, ch. 276, § 305 (reenactment); LAWS OF 2009, ch. 28, § 42(2) (second repeal).

11

variable terms with fixed terms of 36, 18, or 12 months of community custody, depending on the type of offense. LAWS OF 2009, ch. 375, § 5; RCW 9.94A.701(1)-(3). For Mr. Coombes's offense, the community custody term is 36 months under the amended statute. RCW 9.94A.701(1)(b).

Per *Lindsey*, the new community custody law increased the punishment because it changed a previously discretionary term to a mandatory term. Because Mr. Coombes has satisfied both prongs for establishing an unconstitutional ex post facto law, we vacate the community custody portion of Mr. Coombes's sentence and remand for imposition of a term consistent with the law in effect in 2007.

2.    *Whether the trial court erred by imposing a community custody condition prohibiting Mr. Coombes from having any association or contact with gang members or their associates*

Mr. Coombes challenges the trial court's imposition of a community custody condition prohibiting him from having any association or contact with gang members or their associates. Mr. Coombes did not object to this condition at sentencing. Citing *State v. Jones*, 118 Wn. App. 199, 76 P.3d 258 (2003), he argues he may raise this issue for the first time on appeal. We disagree that *Jones* supports his argument.

In *Jones*, the defendant argued that the trial court did not have *authority* to impose certain community custody conditions. Although Everett Jones did not

12

object to the community custody conditions at sentencing, the *Jones* court stated

that he could raise the conditions for the first time on appeal. To support its

statement, *Jones* cited *State v. Julian*, 102 Wn. App. 296, 9 P.3d 851 (2000).

*Jones*, 118 Wn. App. at 204 n.9. In *Julian*, we held that a sentence imposed

without statutory authority could be addressed for the first time on appeal. *Julian*,

102 Wn. App. at 304.

Here, however, the trial court had authority to impose a gang association

prohibition term as a community custody condition. Former RCW 9.94A.700(5)

(2003) of the SRA permitted trial courts to impose certain discretionary conditions

during the course of community custody. One such condition was prohibiting

contact with "a specified class of individuals," and another was imposing other

"crime-related prohibitions." Former RCW 9.94A.700(5)(b), (e).[5]

---

[5] The judgment and sentence does not cite the statute under which the sentencing court exercised its discretion to impose the gang-related prohibition. In his analysis, Mr. Coombes cites RCW 9.94A.700(5)(b), which allows the court to prohibit contact with a "specified class of individuals," while the State cites RCW 9.94A.700(5)(e), which permits the court to impose other general "crime-related prohibitions." The cases interpreting each type of condition use essentially the same standard for both, requiring that the condition relate to the crime. *See State v. Riles*, 135 Wn.2d 326, 350, 957 P.2d 655 (1998), *abrogated on other grounds by State v. Valencia*, 169 Wn.2d 782, 792, 239 P.3d 1059 (2010) (interpreting former RCW 9.94A.120(9)(c)(ii) (1998), which permitted courts to prohibit offenders from having contact with a "specified class of individuals"); *State v. Cordero*, 170 Wn. App. 351, 373, 284 P.3d 773 (2012) (interpreting

13

The question actually presented here is whether the condition was *appropriate* under the facts of this case. The appropriateness of this particular community custody condition involves a trial court's discretion. Former RCW 9.94A.700(5). An alleged error involving a trial court's discretion, such as the one raised here, is susceptible to waiver. *In re Pers. Restraint of Shale*, 160 Wn.2d 489, 494, 158 P.3d 588 (2007) (citing *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 873-74, 50 P.3d 618 (2002)). Because we are remanding this case to correct errors in the judgment and sentence, we exercise our discretion to not review the issue on appeal; rather, we remand to the trial court to consider argument on this issue, so as to afford us a better record for review, if necessary.[6]

---

former RCW 9.94A.505(8) (2006), which permitted courts to impose "crime-related prohibitions"). For this reason, we cite both and do not analyze them separately.

[6] Mr. Coombes additionally contends the condition prohibiting him from having any association or contact with gang members or their associates violates his First Amendment right of free association. Were we to reach this issue, we would note that while on community custody, a defendant's constitutional rights are subject to the infringements authorized by the SRA. *In re Pers. Restraint of Waggy*, 111 Wn. App. 511, 517, 45 P.3d 1103 (2002). Freedom of association may be restricted if reasonably necessary to accomplish the essential needs of the State and public order. *Id.* (quoting *State v. Riley*, 121 Wn.2d 22, 37-38, 846 P.2d 1365 (1993)).

> 3.    *Whether the trial court improperly omitted a finding that Mr.*
>        *Coombes used a firearm during the commission of the offense*

Both parties agree that the judgment and sentence entered after Mr.

Coombes's resentencing improperly omitted a finding of the jury. The remedy for

clerical or scrivener's errors in judgment and sentence forms is remand to the trial

court for correction. *In re Pers. Restraint of Mayer*, 128 Wn. App. 694, 701, 117

P.3d 353 (2005).

At the end of trial, the jury found by special verdict that Mr. Coombes had

used a firearm in the commission of the murder. While the judgment and sentence

entered in January 2012 after the jury trial indicated this finding, the judgment and

sentence entered in August 2014 after resentencing failed to include this finding.

We accept the State's concession of error and remand to the trial court for

correction of Mr. Coombes's judgment and sentence to reflect the jury's finding

that Mr. Coombes used a firearm in the commission of the murder.

We therefore remand this case for resentencing consistent with this opinion.

PERSONAL RESTRAINT PETITION

In his personal restraint petition, Mr. Coombes contends that when he

withdrew his plea to the first degree murder charge in accordance with this court's

opinion, he also withdrew his plea to the unlawful possession of a firearm charge

15

as both were part of the same plea agreement. He further argues that because he was never retried for the unlawful possession of a firearm charge, it is no longer part of his criminal history and cannot be included in the calculation of his offender score.

To prevail in this personal restraint petition, Mr. Coombes must show either a "constitutional error that results in actual prejudice or nonconstitutional error that results in a miscarriage of justice." *In re Pers. Restraint of Waggy*, 111 Wn. App. 511, 518, 45 P.3d 1103 (2002). Bare, unsupported allegations will not satisfy this burden of proof. *Id.* at 518-19. Rather, he must show that more likely than not he was prejudiced by the error. *Id.* at 518. "A petition that fails to meet this basic level of proof and argument may be dismissed summarily." *Id.* at 519.

Mr. Coombes asks this court to conclude that he withdrew both his first degree murder plea and his unlawful possession of a firearm plea in August 2011 following the decision of this court. "This remedy is available to a defendant only where, as part of a 'package deal,' the defendant was correctly informed of the consequences of one charge, but not of another charge." *In re Pers. Restraint of Bradley*, 165 Wn.2d 934, 941, 205 P.3d 123 (2009) (quoting *State v. Turley*, 149 Wn.2d 395, 399-401, 69 P.3d 338 (2003)). A plea bargain is such a deal "if the agreements as to the individual charges are indivisible from one another." *Id.*

16

Appellate courts look "to objective manifestations of intent in determining whether a plea agreement was meant to be indivisible." *Id.* "Where 'pleas to multiple counts or charges were made at the same time, described in one document, and accepted in a single proceeding,' the pleas are indivisible from one another." *Id.* at 941-42 (quoting *Turley*, 149 Wn.2d at 400).

While this case is in a different procedural posture than other cases that have considered the issue of divisibility of a plea agreement, these other cases are helpful in determining whether Mr. Coombes's petition has merit. First, Mr. Coombes signed two separate statements of defendant on plea of guilty for each of the charges. These statements were signed on different days, but they were both filed on June 16, 2008. Each of the separate documents made only one reference to the other charge.[7] Specifically, in each plea statement, the State made the following recommendation encompassing the whole plea agreement:

> (g)    . . . 300 months in prison, credit for time served, dismiss
>        weapon enhancement. Dismiss Intimidation of Witness
>        charge, 08-1-00556-0, *plead to Unlawful Possession of a*
>        *Firearm charge on a different day*, $500.00 crime victims

---

[7] The judgment and sentence for the firearm charge also made one reference to the sentence for the murder charge, stating that the sentence of 41 months for the firearm charge should run "concurrent with Count I." CP at 34. The murder charge was labeled as count I on the separate judgment and sentence for that charge.

17

> compensation assessment, $200.00 court costs, $100.00 DNA
> collection fee, restitution, 24-48 months community custody.

CP at 13, 21 (emphasis added). The recommendation that the firearm charge be entered on a different day is an indication that the parties intended the unlawful possession of a firearm charge to be divisible from the murder charge. Additionally, while the *Bradley* court considered the fact that there were cross-references to other charges in the separate plea documents, it determined such references were not dispositive of an indivisible plea deal. 165 Wn.2d at 943.

Second, Mr. Coombes committed the crimes on different days, with the murder occurring between August 30, 2007, and September 2, 2007, and the unlawful possession of a firearm occurring September 4, 2007. While this difference of a few days alone does not establish an indivisible plea deal, it is a distinction from *Turley* worth noting. *State v. Chambers*, 176 Wn.2d 573, 581, 293 P.3d 1185 (2013); *Bradley*, 165 Wn.2d at 943.

Third, while the record does not include the report of proceedings from Mr. Coombes's sentencing following the guilty pleas, the dates the two judgment and sentences were entered by the court suggest that the pleas were accepted in two separate proceedings, which is another important difference from *Turley*. The

18

judgment and sentence for the murder charge was dated June 9, 2008, while the judgment and sentence for the firearm charge was dated June 16, 2008.

Finally, the documentary record itself evidences an intent to create two separate pleas. Significantly, Mr. Coombes's habeas corpus petition and this court's unpublished opinion focus only on Mr. Coombes's plea to first degree murder. In his petition and in this court's unpublished opinion, there is no mention of Mr. Coombes's separate and later plea to unlawful possession of a firearm. Based on the above considerations, especially the documentary record, we conclude that the sentencing court properly considered Mr. Coombes's guilty plea to unlawful possession of a firearm as part of his criminal history. We therefore dismiss Mr. Coombes's personal restraint petition.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____        _____
Siddoway, C.J.                   Korsmo, J.

19