IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | No. 76497-7-I |
| | ) | |
| KENNETH ALSTON, | ) | DIVISION ONE |
| | ) | |
| Petitioner. | ) | PUBLISHED OPINION |
| | ) | |
| | ) | FILED: February 5, 2019 |
| | ) | |

SMITH, J. — In this petition, Kenneth Alston seeks relief from a 36-month term of community custody imposed in accordance with a statute enacted after he committed the crime. Alston claims that application of the statute to his sentence violates the constitutional prohibition against ex post facto laws. Because the law operates retroactively and increases the quantum of punishment from the level to which Alston was subject on the date of the crime, we agree and grant the petition.

## FACTS

The facts are not in dispute. In 2008, a jury convicted Kenneth Alston of assault in the first degree while armed with a firearm for an offense he committed on September 30, 2007. In accordance with the law in effect at the time of the crime, the court sentenced him to 153 months of confinement, to be followed by a variable term of community custody of 24 to 48 months. See former RCW 9.94A.715(1) (2006) (requiring sentencing court to impose variable terms of

community custody); former RCW 9.94A.850(5) (2005) (Sentencing Guidelines Commission empowered to recommend ranges); former RCW 9.94A.030(41) (2006) (classifying assault in the first degree as a serious violent offense); former WAC 437-20-010 (2007) (designating community custody range of 24 to 48 months for serious violent offenses).

Alston was serving his term of incarceration in 2009 when the Washington State Legislature amended the law with regard to community custody.[1]  The new law replaced variable terms with fixed terms of 12, 18, or 36 months, depending on the crime. See LAWS OF 2009, ch. 375, § 5; former RCW 9.94A.701(1)-(3) (2009). Under the new law, the community custody term for the crime of assault in the first degree is 36 months. See RCW 9.94A.701(1)(b); RCW 9.94A.030(46)(a)(v).

The legislature indicated its intent that the amendment should apply retroactively to individuals, such as Alston, who were sentenced before 2009 and still incarcerated or serving terms of community custody at the time the new law was enacted:

> This act applies retroactively and prospectively regardless of whether the offender is currently on community custody or probation with the department, currently incarcerated with a term of community custody or probation with the department, or sentenced after the effective date of this section.

LAWS OF 2009, ch. 375, § 20; see also LAWS OF 2008, ch. 231, § 6.  The legislature also specifically charged the Department of Corrections (Department) with recalculating terms of community custody for individuals in the Department's custody to bring the sentences into compliance with the current law. See LAWS

---

[1] According to the documents supplied by the Department of Corrections, Alston will be eligible for early release in March 2020.

2

OF 2009, ch. 375, § 9 (The "department of corrections shall recalculate the term of community custody and reset the date that community custody will end . . . for a crime specified in RCW 9.94A.701."); see State v. Franklin, 172 Wn.2d 831, 841-42, 263 P.3d 585 (2011). Accordingly, in July 2009, the Department recalculated the length of Alston's community custody, replacing his variable term with a fixed term of 36 months.

In June 2017, Alston filed a "Petition For Contempt Of Court Pursuant To RCW 7.21 et seq. For Remedial Sanctions" in King County Superior Court. That court transferred the matter to this court for consideration as a personal restraint petition. CrR 7.8(c)(2).[2]

## ANALYSIS

Alston contends the application of RCW 9.94A.701 to his sentence runs afoul of the prohibition on ex post facto laws because the law in effect in 2007 called for a range of community custody. He seeks reimposition of the variable term of community custody, as provided for in his judgment and sentence.

To prevail on a personal restraint petition, a petitioner must show that he or she is under restraint as defined by RAP 16.4(b) and that the restraint is

---

[2] This court granted Alston's motion to file an amended petition, superseding the petition he initially filed in superior court. This court also appointed counsel to represent Alston when it referred his petition to a panel of judges for a decision on the merits. RCW 10.73.150(4); RAP 16.11(b). However, Alston waived his right to counsel and represents himself pro se. Kevin A. Gilbert, a petitioner in another matter, subsequently filed what he describes as an amicus curiae brief on Alston's behalf. However, because it appears that Gilbert is not an attorney licensed to practice law in Washington or in another jurisdiction as required by RAP 10.6(a), we decline to consider the supplemental briefing.

unlawful under RAP 16.4(c). In re Pers. Restraint of Dove, 196 Wn. App. 148, 153-54, 381 P.3d 1280 (2016), review denied, 188 Wn.2d 1008 (2017). Restraint is unlawful if the sentence imposed is unconstitutional. RAP 16.4(2).

Generally, a petitioner seeking collateral review of a claimed constitutional error must establish that the error resulted in actual and substantial prejudice. In re Pers. Restraint of Isadore, 151 Wn.2d 294, 298, 88 P.3d 390 (2004). But where, as here, the petitioner has not had the opportunity to seek direct judicial review of the claimed error, we do not apply the heightened threshold requirements that ordinarily apply to a personal restraint petition. Isadore, 151 Wn.2d at 299. Instead, the petitioner must show only that he or she is under unlawful restraint under RAP 16.4(b) and RAP 16.4(c). Isadore, 151 Wn.2d at 299.

Both the United States and Washington Constitutions prohibit the passage of ex post facto laws. U.S. CONST. art. I, § 10; WASH. CONST. art. I, § 23. The ex post facto clause prohibits a state from enacting a law that retroactively increases the punishment for a crime after it was committed. Collins v. Youngblood, 497 U.S. 37, 43, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990); In re Pers. Restraint of Flint, 174 Wn.2d 539, 545, 277 P.3d 657 (2012). "Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." Garner v. Jones, 529 U.S. 244, 250, 120 S. Ct. 1362, 146 L. Ed. 2d 236 (2000). The "controlling inquiry" is "whether retroactive application of the change in . . . law created 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" Garner, 529 U.S. at 250 (quoting

Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 509, 115 S. Ct. 1597, 131 L. Ed. 2d 588 (1995)). The risk of an adverse impact on a prisoner's expected term of confinement must be more than merely "conceivable." Morales, 514 U.S. at 508. Generally speaking, however, "[t]he question when a change in law creates such a risk is 'a matter of degree'; the test cannot be reduced to a 'single formula.'" Peugh v. United States, 569 U.S. 530, 539, 133 S. Ct. 2072, 186 L. Ed. 2d 84 (2013) (quoting Morales, 514 U.S. at 509).

It is undisputed that RCW 9.94A.701 operates retroactively as to Alston because he committed the offense before the legislature amended the law. The issue is whether the amended community custody law increases the measure of punishment.

Alston relies on the decision of Division Three of this court in State v. Coombes, 191 Wn. App. 241, 361 P.3d 270 (2015), to argue that RCW 9.94A.701 increased the quantum of punishment and therefore violates the constitutional prohibition against ex post facto laws. Coombes pleaded guilty to murder in the first degree in 2008. He later successfully collaterally challenged his plea, withdrew the plea, and went to trial. Coombes, 191 Wn. App. at 246. Following his subsequent jury conviction, the sentencing court imposed a sentence that included a community custody term of 36 months. Coombes, 191 Wn. App. at 249.

On appeal, Coombes claimed, and the State conceded, that imposition of a 36-month fixed term of community custody violated the prohibition against ex post facto laws. Coombes, 191 Wn. App. at 249. The court agreed. The court

concluded that (1) the statute amending community custody terms operated retroactively to Coombes, who committed his offense before the amendment of the community custody law and (2) the new community custody law increased Coombes's punishment because it replaced a previously discretionary term with a mandatory term. Coombes, 191 Wn. App. at 251-53; see also Flint, 174 Wn.2d at 554. Accordingly, the court vacated the community custody portion of Coombes's sentence and remanded for imposition of a variable term consistent with the law in 2007 at the time of Coombes's offense. Coombes, 191 Wn. App. at 253. Recently, Division Two of this court followed the analysis of Coombes, reaching the same conclusion in a case involving the same relevant facts. State v. Contreras-Rebollar, 4 Wn. App. 2d 222, 421 P.3d 509, review granted, 430 P.3d 274 (2018).[3]

The courts in both Coombes and Contreras-Rebollar relied on the United States Supreme Court's decision in Lindsey v. Washington, 301 U.S. 397, 57 S. Ct. 797, 81 L. Ed. 1182 (1937), to support the position that "the applicable quantum of punishment increases when a statute makes a formerly discretionary punishment mandatory." Coombes, 191 Wn. App. at 251-52; see also Contreras-Rebollar, 4 Wn. App. 2d at 229. The defendants in Lindsey were convicted of grand larceny. On the date of the crime, Washington law penalized grand larceny with a sentence of imprisonment of no more than 15 years. Lindsey, 301 U.S. at 398. The law permitted the sentencing court to set the minimum term of imprisonment at any point between 6 months and 5 years, and

---

[3] The Supreme Court granted review only with regard to the issue of imposition of a filing fee as a legal financial obligation.

required the maximum sentence to be greater than the minimum term but less than 15 years. Lindsey, 301 U.S. at 398. Before the court sentenced the defendants, the legislature amended the statute to require courts to set only the maximum term of incarceration at the statutory maximum of 15 years. Lindsey, 301 U.S. at 398. The parole board was then required to fix the duration of confinement, which could not exceed the maximum term of incarceration as determined by the court. Lindsey, 301 U.S. at 398-99. The defendants were sentenced in accordance with the revised statute. The court imposed the maximum sentence of 15 years and did not set a minimum term. Lindsey, 301 U.S. at 399.

The Washington State Supreme Court upheld the sentence because a 15-year maximum sentence was possible under both the prior and the revised statute. Lindsey, 301 U.S. at 400. The United States Supreme Court reversed because "[t]he effect of the new statute is to make mandatory what was before only the maximum sentence." Lindsey, 301 U.S. at 400. Specifically, under the terms of the new statute, the defendant necessarily remained subject to correctional supervision for 15 years, whereas under the old statute, the duration of supervision could have been less. Lindsey, 301 U.S. at 400-01. The Court reasoned:

> Removal of the possibility of a sentence of less than fifteen years, at the end of which petitioners would be freed from further confinement and the tutelage of a parole revocable at will, operates to their detriment in the sense that the standard of punishment adopted by the new statute is more onerous than that of the old. It could hardly be thought that, if a punishment for murder of life imprisonment or death were changed to death alone, the latter penalty could be applied to homicide committed before the change.

7

> Yet this is only a more striking instance of the detriment which ensues from the revision of a statute providing for a maximum and minimum punishment by making the maximum compulsory.

Lindsey, 310 U.S. 400 (citation omitted). Upon concluding that the new law was detrimental to the defendants in comparison with the sentence the court could have imposed under the former statute, the Court stated:

> We need not inquire whether this is technically an increase in the punishment annexed to the crime, see Calder v. Bull, [3 U.S. (3 Dall.) 386], 390[, 1 L. Ed. 648 (1798)]. It is plainly to the substantial disadvantage of petitioners to be deprived of all opportunity to receive a sentence which would give them freedom from custody and control prior to the expiration of the 15-year term.

Lindsey, 301 U.S. at 401-02.

Although the Supreme Court later discarded the "substantial disadvantage" standard cited by the court, the holding of Lindsey remains in full force. See Collins, 497 U.S. at 50 (overruling Kring v. Missouri, 107 U.S. 221, 2 S. Ct. 443, 27 L. Ed. 506 (1883)); Peugh, 569 U.S. at 546. As the Court clarified in Morales, the inquiry is not whether a law results in a disadvantage but whether the retroactive statute "produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." Morales, 514 U.S. at 509; see also Garner, 529 U.S. at 250; Peugh, 569 U.S. at 539. Nevertheless, the result in Lindsey is the same under either standard. Under the former law setting the punishment for larceny, the duration of supervision could have been any amount of time between 6 months and 15 years, whereas under the amended law, the

8

duration of supervision could not be less than the maximum term of 15 years.[4] Since the "measure of punishment prescribed by the later statute [was] more severe than that of the earlier," the statutory amendment at issue produced a "sufficient risk of increasing the measure of punishment" for larceny. Lindsey, 301 U.S. at 401; Morales, 514 U.S. at 509.

This case is more difficult than Lindsey because the mandatory punishment under the new statute is not the previously maximum allowable punishment; the fixed term for Alston's offense is the midpoint of the previously applicable variable range.[5] So, the new law deprives those to whom it applies of the previously available opportunity to serve a term of community custody of less than three years, but at the same time eliminates the risk that the duration of supervision will exceed three years.

We cannot discount the risk of a higher sentence under the amended law merely because the Department had broad discretion as to the timing of release

_____

[4] Although Lindsey is instructive, we do not read that case as establishing the broad proposition that any law that makes a formerly discretionary punishment mandatory necessarily increases the quantum of punishment. The court's ruling hinged upon the critical fact that the amendment made mandatory a sentence that was the maximum permissible punishment under the old law. The punishment under the new law must be more severe than under the former law, even if the new penalty is not strictly mandatory. See Peugh, 569 U.S. at 541 (applying amended sentencing guidelines that increase the recommended sentence can violate the ex post facto clause notwithstanding the discretion of sentencing courts to deviate from the guidelines); accord Miller v. Florida, 482 U.S. 423, 435, 107 S. Ct. 2446, 96 L. Ed. 2d 351 (1987).

[5] The legislature did not uniformly set the fixed terms at the midpoint of the prior variable range. For instance, with respect to violent offenses, the fixed term was set at 18 months, the minimum sentence under the previous variable range. For felony offenses under RCW 69.50 and RCW 69.52, the fixed term was set at 12 months, the maximum sentence under the previous variable range. Compare WAC 437-20-010 (2007) with former RCW 9.94A.701 (2009).

from a variable term of community custody. "The presence of discretion does not displace the protections of the Ex Post Facto Clause." Garner, 529 U.S. at 253 (italics omitted). Nor does the lack of absolute certainty that application of the new law will result in a higher sentence foreclose an ex post facto claim. Both our courts and the Supreme Court have considered the validity under the ex post facto clause of laws altering the terms on which discretionary parole or early release was available to prisoners. See Garner, 529 U.S. 244; Morales, 514 U.S. 499; Weaver v. Graham, 450 U.S. 24, 101 S. Ct. 960, 67 L .Ed. 2d 17 (1981); In re Pers. Restraint of Powell, 117 Wn.2d 175, 814 P.2d 635 (1991). In these analogous circumstances, courts have reached different conclusions as to whether there was an ex post facto violation, but none have rejected the claim merely because there was no guarantee that parole or early release would be granted earlier under the former law. See Garner, 529 U.S. at 253; Morales, 514 U.S. at 508-10 & n.6; Weaver, 450 U.S. at 30-31. For instance, the Supreme Court has held that a statute reducing the amount of good time credits that could be earned by a prisoner violated the ex post facto clause when applied to a person whose crime occurred before the more stringent statute was enacted. Weaver, 450 U.S. at 35-36; see also Lynce v. Mathis, 519 U.S. 433, 117 S. Ct. 891, 137 L. Ed. 2d 63 (1997) (amendment removing accumulated provisional early release credits was an impermissible ex post facto law as it lengthened a period of incarceration for person sentenced under the old law).

On balance, the change in the law that replaced a variable term of community custody with a fixed term poses a sufficient risk of a higher sentence

by entirely eliminating the opportunity to be free of custodial supervision before 36 months. Accordingly, application of RCW 9.94A.701, enacted after Alston's conviction, violates the constitutional prohibition against ex post facto laws. Alston is entitled to the relief he seeks—recalculation of his community custody term in accordance with the law in effect at the time of the offense.[6]

We grant the personal restraint petition.

WE CONCUR:

---

[6] To the extent that Alston seeks contempt sanctions based on the Department's recalculation of his community custody term, this requested relief is beyond the scope of relief available by means of a personal restraint petition. See In re Pers. Restraint of Sappenfield, 138 Wn.2d 588, 595, 980 P.2d 1271 (1999) (In granting a personal restraint petition, this court may only order the removal of the illegal restraint.).

11