IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34859-8-III |
| | ) | (consolidated with |
| Respondent, | ) | No. 34863-6-III) |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW SEAN MCCARTHY, | ) | |
| | ) | |
| Appellant. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |
| In the Matter of the Personal Restraint of | ) | |
| | ) | |
| MATTHEW SEAN MCCARTHY, | ) | |
| | ) | |
| Petitioner. | ) | |

FEARING, J. — Matthew McCarthy seeks relief from personal restraint imposed for his 2016 Spokane County jury conviction for first degree burglary. The trial court imposed a life sentence without the possibility of parole. McCarthy previously appealed his conviction and this court consolidated his personal restraint petition with his direct appeal. Because of competency issues, this court vacated his conviction and remanded to

the trial court without addressing the petition. *State v. McCarthy*, 6 Wn. App. 2d 94,

429 P.3d 1086 (2018), *rev'd*, 193 Wn.2d 792, 446 P.3d 167 (2019). The State petitioned

for review. After granting review, the Supreme Court reversed and remanded the case to

this court for resolution of the issues raised in McCarthy's personal restraint petition.

*State v. McCarthy*, 193 Wn.2d 792, 446 P.3d 167 (2019). In the petition, McCarthy

contends (1) governmental misconduct in failing to correct perjured testimony, (2) use of

false evidence by the State, (3) ineffective assistance of trial counsel, and (4) physical and

psychological abuse by detention services officers. We dismiss his restraint petition.

In his previous appeal, Matthew McCarthy, in a statement of additional grounds

also argued (1) he received ineffective assistance of appellate counsel, (2) the prosecutor

engaged in misconduct when failing to investigate the veracity of the charging document,

and (3) the trial court failed to rule on his habeas corpus petition. We now consider the

statement of additional grounds. We deny the requested relief other than to direct the trial

court to rule on McCarthy's habeas petition.

FACTS

We outlined the underlying facts in detail in our earlier opinion: *State v. McCarthy*,

6 Wn. App. 2d 94, 429 P.3d 1086 (2018), *rev'd*, 193 Wn.2d 792, 446 P.3d 167 (2019).

A recitation of Matthew McCarthy's mental health history is not relevant to our

disposition of McCarthy's petition. Nevertheless, since McCarthy argues officers falsified reports and that the State used fabricated evidence to convict, we repeat the underlying facts of the crime.

The prosecution arises from Matthew McCarthy's trespass into Kayla Gonzales' residence on September 21, 2014. On that autumn day, McCarthy had been free from his latest incarceration for only two and one-half weeks.

On the morning of September 21, 2014, Matthew McCarthy drove on Mount Vernon Street in Spokane on his way to a friend's house. While driving, McCarthy noticed two cars he believed had been parked outside his home on Thor Street. He deemed it peculiar that the same two cars formerly parked on his street were now parked on Mount Vernon Street. So, McCarthy stopped and knocked on the door nearest the parked vehicles. Kayla Gonzales answered the door. According to McCarthy, Gonzales looked at him as if she recognized him. McCarthy then asked for someone named Ellie. Gonzales responded that no one by that name lived at the house and began to close the door.

Matthew McCarthy grew curious about how Kayla Gonzales recognized him. According to McCarthy, he surmised that Gonzales must recognize him because she saw his face from pictures in his ex-wife, Laura's, home. McCarthy, convinced that Gonzales

and Laura McCarthy were friends and that Laura was inside Gonzales' house with another man, blocked, with his arm, the front door from closing. According to McCarthy, his strength overpowered Gonzales as he was able to force his way into the home. Gonzales then exclaimed: "'let me get my child and leave.'" *State v. McCarthy*, 6 Wn. App. at 99.

According to Kayla Gonzales, when Matthew McCarthy pushed the door forward, Gonzales released her hold from the inside of the door, which release propelled McCarthy inside the home. McCarthy lost his balance and, as he flew forward, his arm struck Gonzales' shoulder which pushed her into a wall. Gonzales, who held her cell phone in her hand when she opened the door, later testified she could not remember whether McCarthy knocked the cell phone from her hand or whether the phone flew from her hand when the door swung open.

Matthew McCarthy, realizing he was inside the home, made eye contact with Kayla Gonzales and walked into the living room. Gonzales ran the opposite direction and climbed the staircase toward the bedroom where her two-year-old daughter slept. From upstairs in the bedroom with her daughter, Gonzales heard noises from downstairs as if McCarthy rummaged through the kitchen. When the noise stopped, Gonzales emerged

from the bedroom. McCarthy was no longer inside the home, but he later peered through a window from the outside.

According to Kayla Gonzales, after Matthew McCarthy left the residence, she, not knowing the location of her cell phone, called police from her land line. By the arrival of law enforcement, McCarthy had departed the neighborhood.

Matthew McCarthy returned to Kayla Gonzales's home the following evening, September 22, in search of his former wife, Laura. When McCarthy knocked on the front door, Gonzales's boyfriend, Cory Hierholzer, and his brother answered. McCarthy asked the boyfriend for Laura. The boyfriend responded that Laura was not present, and McCarthy returned to his car and left the vicinity. Gonzales inquired as to the visitor. When Hierholzer described the man, Gonzales immediately called the police.

Minutes later, Matthew McCarthy returned to Kayla Gonzales's house a third time and a second time that evening. The boyfriend stood outside. McCarthy stopped his car, rolled down his window, and asked the brother if anyone had found McCarthy's cellphone. Apparently, McCarthy had misplaced his phone. The brother fidgeted like he would attack McCarthy so McCarthy sped away. Cory Hierholzer, his brother, and a few of their friends chased McCarthy in two cars. The group pursued McCarthy to a gas station and cornered him until police arrived. Gonzales drove to the gas station and

identified McCarthy as the man who entered her house the previous morning. Police arrested him.

The following facts lack relevance to the underlying crime but assist in understanding Matthew McCarthy's arguments relating to falsified reports by arresting officers as well as his argument relating to ineffective assistance of counsel. The facts also aid in understanding McCarthy's concern that law enforcement, with the assistance of others, fabricated evidence.

Officer Todd Belitz arrived at the gas station to assist other officers on September 22, 2014. Belitz asked Kayla Gonzales about the previous morning when Matthew McCarthy entered her home. Officer Belitz's report matched the testimony that Gonzales gave at trial until Gonzales saw McCarthy peeping through the windows. In Officer Belitz's report, he wrote that Gonzales called 911, found her car keys and phone minutes later, and then, while holding her daughter, exited the front door to walk to the garage in order to safely leave the home in her car.

Officer Todd Belitz further wrote in his incident report that, after Kayla Gonzales took two steps toward the garage, she saw Matthew McCarthy sitting on the hood of a green sports utility vehicle. Gonzales and McCarthy locked eyes, and Gonzales told McCarthy that he could take whatever he wanted and she would leave the door open if

she and her child could leave safely. McCarthy only laughed at Gonzales. She concluded she could not leave safely, ran back inside the house, and locked the door. Officer Belitz, in his report, also declared that Gonzales remained on the phone with 911 the entire time this exchange took place.

The affidavit of facts in support of the charges read that Kayla Gonzales would testify that Matthew McCarthy overpowered her after she tried to shut the door and that he slammed his shoulder into the door causing it to fly open. The affidavit also stated that Gonzales would testify that McCarthy two-handedly shoved her in the chest which is what caused her to fall backward and hit the wall and that McCarthy then slapped the cell phone from Gonzales' hand as she called 911.

## PROCEDURE

The State of Washington charged Matthew McCarthy with first degree burglary predicated on an assault of Kayla Gonzales. The alleged assault consisted of McCarthy striking Gonzales as he entered Gonzales' residence and knocking Gonzales' cellphone from her hand. By adulthood, McCarthy had amassed a lengthy criminal history that included two prior serious offense convictions. As a result, the State sought a persistent offender sentence of life without the possibility of parole.

7

After Matthew McCarthy's arrest in September 2014 and until his trial, McCarthy underwent numerous competency evaluations, and the trial court held a competency trial. This court, in its earlier opinion, discussed at length the proceedings leading to the jury's finding that McCarthy was competent to stand trial as well as the trial court's decision to allow McCarthy to proceed pro se. *See State v. McCarthy*, 6 Wn. App. 2d 94 (2018). We do not revisit the testimony and proceedings regarding McCarthy's competency.

The following information relates to Matthew McCarthy's habeas corpus petition based on his concerns that correction officers harmed him with toxic fumes. In pleadings filed with the superior court after May 13, 2016, Matthew McCarthy informed the superior court of actions taken by jail officers after the court authorized him to represent himself. According to McCarthy, for the last month and a half, corrections officers exposed him to toxic fumes. At first, he thought officers had poisoned his food, but then he smelled an odor in his cell. McCarthy described one instance when the jail sergeant approached his cell, under the pretense to discuss grievances McCarthy filed. Toxic fumes then permeated his cell and destroyed his cognitive skills. In a later filed inmate grievance, McCarthy repeated his complaint of toxification of his cell. McCarthy complained that the continued chemical attacks prevented his ability to prepare a defense.

8

On June 6, 2016, Matthew McCarthy filed a motion to dismiss and a petition for writ of habeas corpus with the superior court. In both pleadings, he asked for dismissal of the prosecution because of shocking government misconduct.

In response to Matthew McCarthy's motion to dismiss and petition for writ of habeas corpus, Ron Oscarson, Spokane County director of facilities, filed a certificate under penalty of perjury. Oscarson averred that no toxic fumes entered McCarthy's cell through the jail's heating and ventilation system. John McGrath, Spokane County director of detention services, signed a certificate, in which he declared that officers entered McCarthy's jail cell and smelled no fumes. McGrath added that no other inmates or corrections officers complained of toxic fumes. The superior court denied the motion to dismiss.

During the hearing on the motion to dismiss and writ of habeas corpus and after the superior court denied Matthew McCarthy's motion to dismiss, McCarthy mentioned his pending petition for writ of habeas corpus. The superior court noted that the State had filed affidavits disputing McCarthy's claim that prison officials engaged in perfuming his cell with toxic fumes. The court asked McCarthy if he desired time to review the affidavits. McCarthy replied affirmatively, and the court postponed the hearing on the

petition for a writ. The record does not show any later hearing on the petition for a writ of habeas corpus.

Trial proceeded on September 19, 2016. Matthew McCarthy testified on his own behalf. On September 21, 2016, the jury returned a verdict of guilty to the charge of first degree burglary. The trial court sentenced Matthew McCarthy to a life sentence without the possibility of parole.

Matthew McCarthy filed a personal restraint petition with this court alleging governmental misconduct, ineffective assistance of counsel, and abuse by jail staff. Shortly after, McCarthy's attorney filed a notice of appeal. This court consolidated the direct appeal with the personal restraint petition. On appeal, McCarthy assigned two errors in the trial court proceedings. Conflating the two assignments of error, this court asked whether the trial court, at some stage after the jury finding of competency, had reason to doubt McCarthy's competency and should have directed another evaluation.

Based on its review of the record, this court agreed that reasons existed to doubt Matthew McCarthy's competency, vacated his conviction, and remanded to the trial court. Because this court reversed McCarthy's conviction based solely on the failure to order a competency hearing, we did not resolve the other issues raised on appeal.

The State petitioned for review. The Washington Supreme Court granted review.

The Supreme Court reversed and remanded the case to this court for consideration of the

remaining issues raised in Matthew McCarthy's personal restraint petition.

LAW AND ANALYSIS

False Evidence and Perjured Testimony

In both his statement of additional grounds and personal restraint petition,

Matthew McCarthy argues that the prosecution engaged in misconduct. To obtain relief

in a personal restraint petition, the petitioner must show that he or she was actually

prejudiced by a violation of a constitutional right or by a fundamental defect that

inherently results in a complete miscarriage of justice. *In re Personal Restraint of Cook*,

114 Wn.2d 802, 810-11, 792 P.2d 506 (1990). Bare and unsupported allegations are

insufficient to merit relief. *State v. Coombes*, 191 Wn. App. 241, 256, 361 P.3d 270

(2015). Instead, the petitioner must show that more likely than not, he or she was

prejudiced by the error. *State v. Coombes*, 191 Wn. App. at 256. We may summarily

dismiss a petition that fails to meet this basic level of proof. *State v. Coombes*, 191 Wn.

App. at 256.

To prevail on a claim of prosecutorial misconduct, the defendant must establish

both improper conduct by the prosecutor and prejudicial effect. *State v. Pirtle*, 127

Wn.2d 628, 672, 904 P.2d 245 (1995). Misconduct is prejudicial only with a substantial likelihood that the misconduct affected the jury's verdict. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).

Matthew McCarthy states, without citation to legal authority, that the State has an obligation to investigate the veracity of a charging document. He observes that Officer Todd Belitz's police report and affidavit of facts supplied probable cause for the prosecutor to file an information charging him with the crime of first degree burglary. McCarthy then argues that trial testimony that contradicted Belitz's police report and affidavit warranted a closer inspection.

We reject Matthew McCarthy's reasoning. Officer Todd Belitz's report and affidavit of facts outlined the testimony expected from various witnesses. Belitz prepared both documents at the time the State charged McCarthy with a crime. Neither the affidavit nor the report prevents a witness from testifying differently at trial. A differing account does not void the charging document. Thus, McCarthy cannot show the prosecutor's action, or failure to act, was improper. Furthermore, McCarthy does not present any evidence to suggest that a different result would have occurred had the State conducted any additional investigation. As a result, McCarthy also fails to show any prejudice.

Due Process and Fabricated Evidence

Matthew McCarthy also claims a violation of the due process clause resulting from the State's use of fabricated evidence and perjured testimony to convict him. Use of fabricated evidence deprives the accused of liberty in violation of constitutional due process. *Jones v. State*, 170 Wn.2d 338, 350, 242 P.3d 825 (2010). Those responsible with upholding the law are prohibited from deliberately fabricating evidence. *Jones v. State*, 170 Wn.2d at 350. Moreover, the due process clause of the Fourteenth Amendment to the United States Constitution imposes on prosecutors a duty not to introduce perjured testimony or use evidence known to be false to convict a defendant. *State v. Finnegan*, 6 Wn. App. 612, 616, 495 P.2d 674 (1972). The State also violates the Fourteenth Amendment when it allows false evidence to go uncorrected when it appears. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959). A conviction obtained by the knowing use of perjured testimony is fundamentally unfair and must be set aside on a reasonable likelihood that the false testimony could have affected the judgment of the jury. *State v. Larson*, 160 Wn. App. 577, 594, 249 P.3d 669 (2011).

The State of Washington called Kayla Gonzales as a witness. Matthew McCarthy notes, without citation to the record, that Gonzales, before trial, told defense counsel and an investigator that the front door hit her during the confrontation and the door caused her

13

to drop her phone. Nevertheless, according to officer reports, Gonzales stated that

McCarthy slapped the phone out her hands. At trial, Gonzales could not remember how

she lost the phone nor her apparent statement to defense counsel. We do not deem this

minor discrepancy to be false testimony. Witnesses with the passage of time develop a

hazy memory. Gonzales was subject to cross-examination and the jury determined the

credibility of her testimony. Furthermore, McCarthy does not show any reasonable

likelihood the discrepancy affected the judgment of the jury or that the State knew

Gonzales was lying.

Matthew McCarthy further argues that police conduct violated his due process

rights. In determining whether police conduct violates due process, the conduct must

"shock the universal sense of fairness." *State v. Lively*, 130 Wn.2d 1, 19, 921 P.2d 1035

(1996). A due process claim based on outrageous conduct requires more than a mere

demonstration of flagrant police conduct and dismissal is reserved for only the most

egregious circumstances. *State v. Lively*, 130 Wn.2d at 20.

Matthew McCarthy contends that the Spokane Police officers manufactured

evidence, manipulated the crime scene, and falsified reports. McCarthy emphasizes that

Officer Todd Belitz's report mentioned a police corporal taking photographs of an

apparent scrape on Kayla Gonzales' right wrist. The State, however, never produced

14

these photos at any stage of the proceedings, nor are they in the record. Because the State did not introduce the photos at trial, McCarthy insists that the pictures do not exist and Belitz prevaricated in his report. We conclude that, even though the State did not display the photos at trial, police conduct did not rise to the level of egregious behavior that amounts to a due process violation.

As we already explained, Matthew McCarthy accurately notes that Officer Todd Belitz's report differs with the trial testimony of Kayla Gonzales. Gonzales testified that she lost her cell phone during the burglary and remembered using the landline house phone to call police. Thus, the information in the report about Gonzales going outside to try to leave in her car and then returning inside the home and being on the phone with 911 the entire time might be inaccurate. Nevertheless, we do not know whether Gonzales' "landline" telephone was actually a cordless phone capable of providing mobility.

Officer Todd Belitz's affidavit of facts also notes Matthew McCarthy slammed his shoulder into the front door causing it to fly open, whereas Gonzales testified she let go of the door which caused the door to swing open faster than anticipated. The affidavit of facts further stated that McCarthy two-handedly shoved Gonzales and that he slapped the cell phone out of Gonzales' hand. Trial testimony did not confirm these two purported facts. Notwithstanding, the jury never heard this information, nor did the State rely on

15

Officer Belitz's version of the events at McCarthy's trial. Thus, McCarthy sustained no prejudice.

Ineffective Assistance of Counsel

Matthew McCarthy next asserts ineffective assistance of counsel for both trial and appellate counsel. A challenging defendant must show both deficient performance and resulting prejudice to succeed on an ineffective assistance of counsel claim. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). For deficient performance, the defendant must show that his defense counsel's representation fell below an objective standard of reasonableness. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The threshold for deficient performance is high, given the deference afforded to decisions of defense counsel in the course of representation. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). When counsel's conduct can be characterized as legitimate trial strategy, performance is not deficient. *State v. Grier*, 171 Wn.2d at 33.

To prove resulting prejudice, the defendant must show a reasonable probability that, but for the defense counsel's errors, the result of the proceeding would have been different. *State v. McFarland*, 127 Wn.2d at 334-35. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland v. Washington*,

466 U.S. at 694. The analysis of any claim of ineffective performance begins with a "strong presumption that counsel's performance was reasonable." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

Matthew McCarthy complains that his trial counsel provided ineffective assistance for not conducting a proper investigation, failing to impeach the testimony of Kayla Gonzales and two officers, failing to conduct a CrR 3.5 hearing to challenge the information and the finding of probable cause to proceed, failing to cross-examine Officer Todd Belitz on the inconsistencies in his report, and not requesting a lesser included instruction of fourth degree assault. Most, if not all, of these contentions fall with the category of legitimate trial strategy. Defense counsel likely refrained from questioning Officer Belitz on the inconsistencies in his report because the information in the report painted McCarthy in a worse light than the testimony elicited at trial. Additionally, McCarthy cannot show any resulting prejudice. The record does not establish a reasonable probability of an acquittal if trial counsel had completed any of the actions about which McCarthy now complains.

In his statement of additional grounds for review, Matthew McCarthy complains that his appellate counsel failed to respond to any of his written communications or

requests. Even if true and even if the ignoring of McCarthy constituted deficient performance, McCarthy cannot and does not show any resulting prejudice.

Matthew McCarthy also accuses his appellate counsel of ineffectiveness because her assignments of error failed. We disagree. One astute assignment of error led this court to reverse McCarthy's conviction.

Detention Services

Matthew McCarthy contends that the State did not conduct an independent investigation into his allegations of noxious gasses, assault, or harassment while housed in detention services. McCarthy alleges that the abuse he suffered impeded his preparation, investigation, and presentation of his defense.

The trial court conducted multiple hearings to address Matthew McCarthy's concerns about the Spokane County Detention Center. Ron Oscarson, Spokane County director of facilities, averred that no toxic fumes entered McCarthy's cell through the jail's heating and ventilation system. John McGrath, Spokane County director of detention services, declared that officers entered McCarthy's jail cell and smelled no fumes. McGrath added that no other inmates or corrections officers complained of toxic fumes.

Matthew McCarthy states that Ron Oscarson's investigation should be given little weight because, as Spokane County director of facilities, Oscarson was investigating his own employees. McCarthy cites to no authority requiring the State to conduct an independent investigation. In addition, McCarthy shows no prejudice when the trial court reappointed counsel after McCarthy surrendered his pro se status due to the conditions of his pretrial confinement.

## Writ of Habeas Corpus

The State of Washington concedes that the superior court never decided Matthew McCarthy's petition for writ of habeas corpus. The trial court entertained the writ and heard from detention services. The court, however, reserved ruling on the petition, and the record establishes no later ruling. Despite the State's belief that the habeas petition lacked evidentiary support, it concedes the trial court should rule on the issues presented. Based on the concession, we remand for the trial court to make a ruling on McCarthy's habeas petition.

## CONCLUSION

We dismiss Matthew McCarthy's personal restraint petition, and we deny the relief requested in his statement of additional grounds. We remand for the trial court to entertain McCarthy's petition for writ of habeas corpus.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, J.

_____
Lawrence-Berrey, J.